## LITCHFIELD v. THE COUNTY OF POLK.

1. **Injunction:** SALE FOR TAXES. The undisputed owner of land may maintain a proceeding to restrain the sale thereof for the payment of taxes illegally assessed.

2. —— PARTIES: TITLE. But when the question of the right to levy taxes involves the validity of a title adverse to that of the plaintiff, in the lands, the court will dismiss the application if the adverse claimant is not brought in as a party.

*Appeal from the Polk District Court.*

TUESDAY, DECEMBER 20.

IN EQUITY: DES MOINES RIVER GRANT, TITLES, &c.— The petition alleges that the plaintiff is the owner of three certain tracts of real estate, "lying within five miles of the Des Moines river and north of the Raccoon Forks." That the plaintiff acquired his title May 7, 1860, by deed from the Des Moines Navigation and Railroad Company; that the said company acquired title by deed from the State, May 3, 1858; that the State had no title until the passage of the joint resolution of Congress of March 2, 1861, whereby the State acquired title to the lands (among

others) described in the plaintiff's petition, and this title at once vested in and inured to the benefit of the plaintiff, the State having before conveyed to him May 3, 1858, as above stated; that the title remained in the United States until March 2, 1861, before which time the lands were not taxable by the State of Iowa; yet the officers of the State have assessed and levied, for the years 1859, 1860 and 1861, a tax upon the said land without authority of law, and to collect said tax have advertised the said land for sale. An injunction is prayed, and a decree asking that the said taxes be declared illegal, &c. .

The answer admits the levy of the taxes, &c., and alleges that the Des Moines Navigation and Railroad Company were the owners of the land on and after May 3, 1858, and not the United States.

An amended answer denies that the plaintiff has any title in the lands described in his petition; that the taxes were not charged against him personally; that he hath no interest in this suit; and that the lands belong to the Mississippi and Missouri Railroad Company under the act of Congress of May 15, 1856.

Bearing upon the issues thus made, many facts were put in evidence, by the agreement of parties.

It was shown that the three tracts of land named in the petition were in the aggregate assessed and taxed at $13.29 for 1859, 1860 and 1861, and that the county treasurer intended to sell the said land for that amount and interest, unless the taxes were paid.

The court below dismissed the petition, and plaintiff appeals.

*Charles Mason* and *J. M. Elwood* for the plaintiff.

*S. Sibley*, with whom was *Wm. Phillips*, for the appellee.

DILLON, J.—This action of the court was, under the circumstances of the case, proper.

Where the plaintiff is the undisputed owner of land, he
1. INJUNC- is frequently allowed to file a bill to restrain an
TION: sale
for taxes. illegal sale thereof for taxes, grounding his right
to relief upon the unauthorized proceedings of public
officers. And even in such case there are not wanting
respectable authorities that relief cannot be had by bill in
chancery to enjoin the sale. Blackw. on Tax Titles, chap.
34, p. 563; and for full discussion of this subject, see
*Macklot* v. *City of Davenport,* 17 Iowa, 379.

If a plaintiff's ownership was not brought into question,
and the proceedings to tax his lands were clearly illegal,
we are inclined to think that a bill of this kind could be
maintained.

From this statement it is plainly seen, that the title antagonistic to the plaintiff's is, that which is claimed under
2. —— par- the railroad grant (so called) of May 15, 1856, in
ties: title. which grant, so far as concerns the lands in controversy, the Mississippi and Missouri Railroad Company
are, by the action of the legislature of Iowa, interested
adversely to the plaintiff. The plaintiff's counsel, indeed,
candidly admits in his argument that "if these lands passed
to the State by the grant of May 15, 1856, they are taxable in our hands for each year subsequent to 1858. But
if the title did not then pass," continues the argument, "it
remained in the United States and was transferred to the
State of Iowa either by the joint resolution of March 2,
1861, or by the act of Congress of July 12, 1862. In
either case the title passed through the State to its grantee
aforesaid (the Navigation Company) and would *thereafter* be
taxable in the hands of such grantee."

The whole question, therefore, turns on the inquiry
whether these and other lands similarly situated are
included in the railroad grant of May 15th, 1856. The

plaintiff's counsel then takes the negative of that question, and proceeds in a thorough and exhaustive argument to maintain that these lands were exempted or reserved from the operation of that grant by the proviso in the first section, which declares "that any and all lands heretofore reserved to the United States by any act of Congress, or in any other manner by competent authority, for the purpose of aiding in any objects of internal improvements, or for any other purpose whatsoever, be and the same are hereby reserved from the operation of this act," &c.

The parties adversely interested to the plaintiff, viz., the Mississippi and Missouri Railroad Company, are not before the court, not being made parties to the action. *We cannot decide that the plaintiff should have the relief sought, without necessarily deciding that the railroad company last named has no title by virtue of the act of Congress of May 15th, 1856, and the act of the Iowa General Assembly of July 14th, 1856.*

It will be time enough to decide this most important question when *both* of the real parties in interest, upon a proper case made, bring it before us.

It would be highly improper to decide it in a collateral proceeding, upon the complaint of one of the parties that the land to which he claims title is sought unjustly to be made liable for the insignificant sum of thirteen dollars and twenty-nine cents.

It is against all principle, and, as we suppose, without support in the authority of adjudged cases, to allow the plaintiff to file a bill alleging that he owns a tract of land, claiming in argument that an adverse claimant does not own it, omit to make such adverse claimant a party, and ask a decree, which can only be granted by deciding against the rights of such omitted party.

In this attitude of the case, the court should have pursued the course prescribed by section 2765 of the Revision,

which provides that " when a determination of the contro-versy between the parties before the court cannot be made without the presence of other parties, the court must order them to be brought in."

Without the presence of the railroad company, the court could not properly determine the question made. The court should have ordered the railroad company to have been made a party. See *Fowler v. Doyle*, 16 Iowa, 534, where this section and the proper practice is considered somewhat at length.

The order dismissing the petition will be set aside, the cause remanded with directions again to dismiss the same, unless the plaintiff shall, within such time as the District Court direct, bring in the railroad company as a party to the proceeding.

Costs on appeal to abide event.