## REYNOLDS *v.* MILLER.

Where in an application to the district court, for the allowance of an appeal from the decision of the county court, granting letters of administration to M., on the estate of R., made by the heirs of R. and

Reynolds v. Miller.

others interested in his estate, it appeared that R. died in 1837, a non-resident of the State; that no administration was granted on his estate in this State, until May, 1855, when the defendant, M., applied for, and was appointed administrator; that the said heirs and others had no notice of the intention of M. to apply for letters; and that they had no knowledge of the grant of such letters, until after the expiration of the thirty days allowed for appeal, which application was made within sixty days after the appointment of M.; *Held*, That the petition showed good ground for an appeal, as well as that the failure to take it in time, was without fault on the part of the petitioners.

### *Appeal from the Lee District Court.*

### WEDNESDAY, OCTOBER 13.

Application to the district court for the allowance of an appeal from the order of the county court, granting to Peter Miller, letters of administration on the estate of Otis Reynolds, deceased. The defendant demurred to the petition, which demurrer was sustained, and the petitioners appeal. The facts of the case are fully stated in the opinion of the court.

*Rankin, Miller & Enster*, for the appellants, in support of their views, cited the following authorities: Code, sec. 1272; 3 Gillman, 420; Code, sec. 1325; 9 Gill, 299; 1 Hill, 326; 4 Conn., 219; Code, sec. 1673; Ib., sec. 1314.

*George C. Dixon* and *Daniel F. Miller*, for the appellee.

This is a petition for an allowance of an appeal after the thirty days have elapsed. The allegation is, that petitioners had no notice or information of such appointment, and the petition is sworn to by L. F. Miller, alone. Two objections are made to this allegation: 1. Some of the petitioners might have had such notice, and yet the averment be true, that all of them did not have such notice; 2. Miller alone swears to such want of notice. Now, such knowledge was purely personal in its character, and the affiant could not, in the nature of things, speak for any

other except himself. All the others may have had full notice—personal notice—and yet he not know the fact. The law regulating appeals will be found in the Code, sections 131 and 134.

But if they have alleged a sufficient excuse, does the petition upon its merits—admitting any fact which is well pleaded to be true—present such a case as entitles them to relief?

I. The regularity of the appointment of Miller as executor, is not controverted. By virtue of that appointment, he became vested with power over all the estate of O. Reynolds, deceased, which was in Lee county, so far as administration is concerned. The Code, (section 1272), vests power in the county court to grant administration upon the estates of all persons, whether they are residents or non-residents, and who leave property to be administered upon within the county. The word "property," as used in the Code, and as defined therein, "includes personal and real property." Section 26, clause 10. It is equivalent to the word "estate," as used in relation to wills. It means every interest a man may have in any property, real or personal. The power of the executor, then, was complete over the subject matter. It does not alter the law as it previously stood. See Laws of Michigan, 308, sec. 8; Laws of Iowa of 1839, 503, sec. 94; Stat. of Iowa of 1843, 702, secs. 21, 22; and see *Bowles' Heirs* v. *Rome, adm'r*, 3 Gilman, 420. In this case, the old law expressly limited the power of administration to goods and chattels. In our law, it extends to the estate, or property. All the estate, real or personal, of the deceased, is subject to the payment of his debts. See Laws of Michigan, 309, secs. 3, 8 and 10; Laws of Iowa, 1839, 502–3; Stat. of Iowa, 1843, 722; Ib., 702; Code of Iowa, sections 1341, 1353.

II. But it is said the appointment of executor not having been made until after five years after the death of decedent was known, it is not valid. In this case, the averment is, that Reynolds died in 1837, and that such death

was generally known; that administration was not taken out until May, 1855; and that therefore, more than five years having elapsed, the appointment was not valid under Code, section 1325. This involves the construction of statutes of limitation, and especially this section, which is only applicable to administration, and does not constitute a part of the general law of limitations in our Code. The following principles of law are applicable, and well settled:

1. Laws are always construed strictly to save a right, or avoid a penalty; and liberally to give a remedy or affect an object declared in the law. 1 Bald. C. C., 316, cited in 1 Peters Digest, 420.

2. It is a general rule that a statute shall not be so construed as to give it a retrospect beyond its commencement. This is not only the doctrine of the common law, but a principle of general jurisprudence. 5 Hill, 334, and cases cited; 1 Denio, 129; 3 Denio, 594.

3. So, no statute should have a retrospect beyond the period of its commencement, and should never be so construed as to divest acquired rights. 2 Gilman, 528; 11 Ill., 54; 10 Smedes & Marshall, 599; 14 Ill., 495; 1 G. Greene, 346; 2 G. Greene, 184, 244, 243.

4. The language of the United States Supreme Court is: "In construing statutes, there never should be allowed a retrospective operation, not required by express command, or by necessary and unavoidable implication. Without such command or implication, they speak and operate upon the future only. Especially should this rule of interpetation prevail, where the effect and operation of a law are designed, apart from the intrinsic merits of the rights of parties, to restrict the assertion of those rights. 15 Howard, 423; and see, to same point, 2 Carter, 486; 6 Cranch, 174; 2 Gallison C. C., 204.

5. The statute of limitations belongs entirely to the remedy, and does not affect, or form part of, the contract. 3 Johns., 267; 1 Carter, 56; Angell on Limitations, sec. 64 to 68, and cases cited; 7 Indiana, 91; 8 Peters, 371;

cases, the whole learning on this subject is considered and exhausted.

6.   The repeal of a statute of limitations, without some saving clause as to former rights accruing, but incomplete when such repeal takes place, places the parties as though no previous statute of limitations had ever existed.   1 G. Greene, 345; 1 McLean, 158; 1 Hill, 326, and cases cited. This case is remarkably clear and full.

7.   The period of limitation does not begin to run until the grant of administration.   There must be a person in existence capable of suing and being sued, before the statute of limitations can begin to run and operate upon the right.   Angell on Limitations, sections 54–64; 1 Manning, 185–6; 5 Barb., 394, and cases cited; 11 Metcalf, 445.

8.   On the death of the ancestor, the land held by him, descends to the heir, but it is held by him subject to the claims and rights of creditors.   The heir cannot alien or incumber it in any way, to the prejudice of creditors.   His is a defeasable title.   2 Greenleaf's Cruise, 142, note 1; 1 Hilliard on Mort., 210; 2 Hilliard Abridg. of Real Property, 578, sec. 28; 3 Mass., 523; 4 Mass., 354, 512, 150; 8 Ohio, 217; 3 Ohio State, 4, 494; 13 Ill., 171; 15 Ib., 156; 2 Peters, 658–9; 16 Ib., 62–3.

9.   The purchaser under administrator's sale, enters under the ancestor, and not under the heir.   The proceeding is one *in rem*, binding all parties.   15 Ohio, 435, 698; 3 Ohio State, 502–5; 11 Serg. & Rawle, 430; 2 Howard, 338.

10.   The non-residence of intestate, and the presumed non-residence of all other parties concerned, prevented the time from running.   Laws of Iowa, 1839, 327; Statute of Iowa, 1843, 386.

11.   Let us look at the time within which administration was obtained under our previous laws.   By Laws of Michigan, 312, twenty years were given; by Laws of Iowa, 1839, no time appears to have been specified, and of course the twenty years continued.   By the statutes of Iowa, of 1843, 678, ten years are given.   Now, by the

13 Peters, 312; 9 Howard, 407. In these two last cited the laws of Michigan, the twenty years had not expired, when these letters were granted. In 1843, a new law limited the period to ten years, but in 1851 the Code was passed without any saving clause. The time had not then elapsed.

12. But the Code in 1851, limited the time to five years—within four years our letters are granted—therefore, we are in time, unless a retrospective effect is given to the law. The Code (section 1325), reads as follows:— "Administration shall not be originally granted after the lapse of five years from the death of the decedent, or from the time his death was known, in case he died out of the State." And section 1508 reads as follows: "No person can question the validity of such sale after the lapse of five years from the time it was made." In another case, applying this section, this court says: "We are not disposed to regard this last section of the Code as in the nature of a general statute of limitations, so as to apply to sales which had taken place prior to the passage of that statute; but should limit its application to causes arising under chapter 88 of the Code alone. But if it was to be regarded as an ordinary statute of limitation, then those principles would apply, which are settled in the cases of *Morris* v. *Slaughter*, 1 G. Greene, 338; *Forsyth* v. *Ripley*, 2 Ib., 181; *Hench* v. *Weatherford*, 2 Ib., 246; and *Gordon* v. *Mounts*, 2 Ib., 243. See *Cooper* v. *Sunderland*, 3 Iowa, 122. Now, in these cases, the analogy is complete, and the reasoning equally applicable to both sections. The sections 1671, 2 and 3, of the Code, are only applicable to chapter 99 of the Code, and have no relation to this provision under consideration. For the reasons above stated, we think the administrator was appointed in time, and upon no principle of law can the Code have a retrospective effect, unless expressly given.

WOODWARD, J.—This is an application under the one hundred and thirty-fourth section of the Code, for the al-

lowance of an appeal from the county court. This section enacts, that if a party fails, without fault on his part, to claim or to perfect an appeal within the thirty days allowed by statute, he may apply to the district court, which, upon being satisfied of the above matter, and that the case requires revision, may authorize an appeal.

The only question is, whether a proper case is made for such an allowance. It is briefly the following: Otis Reynolds died in 1837, a non-resident of the State. No administration was taken out on his estate in this jurisdiction, until in May, 1855, the defendant applied for letters. The petitioners represent themselves to be his heirs at law, and others interested in his estate. They state that none of them had any notice of the intention of Miller to apply for letters; and that they had no knowledge of the grant of such letters, until the expiration of the thirty days allowed for appeal. The petitioners, therefore, pray the court to authorize an appeal, and show that there are questions of weight and importance connected with that of granting the letters, which should be heard: of this nature is the one whether administration could legally have been granted, and that, also, whether Miller was entitled to it.

These questions are somewhat fully discussed by counsel, but this is understood to be with a view of showing the necessity of a revision of the order of the county court; for the only question presented is whether the appeal should have been allowed. The respondent demurred to the petition, thus assuming the truth of the facts stated. In our opinion, the petition shows good ground for an appeal, as well as that the failure to take it in time, was without fault on the part of the petitioners. The fact that for eighteen years after the death of Reynolds, no administration was taken, presents serious questions for consideration; and the fact that the application was made after that length of time, without notice to the next of kin, and their want of knowledge of the application, and of the allowance of it, present an excuse for not taking an appeal within the thirty days prescribed. The appellants seem to

have proceeded as soon as the facts came to their knowledge, for the present petition was filed within sixty days after the appointment of Miller.

The judgment of the district court is reversed, with directions to allow the appeal, and to hear the cause of the petitioners.